## Commonwealth v. Walker

*Burton Satzberg,* for Commonwealth.
*Milton Leidner,* for defendant.

SLOANE, P. J., July 3, 1963.—This is an appeal from a sentence imposed by this court upon defendant, William Walker.

On November 30, 1960, defendant was arrested and charged with aggravated assault and battery upon one Gladys Justis. Also that same day he was charged with robbery and aggravated assault and battery upon one Harold Johnson, and with receiving stolen goods from Johnson. On these charges, defendant was held in custody in default of $1,500 bail. On December 15, 1960, defendant was indicted on all of the foregoing charges. At his arraignment on December 21, 1960, defendant pleaded not guilty to all charges.

After several continuations of the trials in the above matters, defendant was, on January 16, 1962, released on his own recognizance upon motion of the court. Defendant enjoyed his freedom until September 27, 1962, when he was again arrested, this time on charges of forcible rape, robbery, aggravated assault and battery, assault with intent to ravish, solicitation to commit sodomy and indecent assault. Again, defendant was committed to prison.

On February 11, 1963, defendant was tried by a jury on the December 15, 1960, indictments. At that time defendant changed his plea to guilty to the charge of aggravated assault and battery upon Gladys Justis. He was found not guilty of the other charges. Sentence was deferred on the guilty plea pending a presentence investigation. This investigation was concluded and, on March 26, 1963, defendant was sentenced to a minimum of eight months and a maximum of three years in the county prison.

The contention is over this sentence. Defendant asserts error in that we did not give defendant credit under the Act of May 28, 1937, P. L. 1036, 19 PS §894, for the time spent in prison in default of bail. Defendant contends that the time he spent in prison from November 30, 1960, until January 16, 1962, a period of 13 months and 16 days, should have been made a part of the sentence imposed by causing the sentence to commence on the date of the commitment in question.

It should be noted that "Courts have inherent power to fix the time of the beginning of service of sentences imposed, which cannot be taken away except by express and unequivocal statutory enactment": Commonwealth ex rel. Rogers v. Harris, 180 Pa. Superior Ct. 323, 329. The reason is pretty plain. The court hears the evidence, sees the defendant, and reviews his record and screens his character, and is thus in the best position to know what sentence would best serve the interests of both defendant and society. Furthermore, the encroachment by the legislature into such a delicate area of discretion constitutes a breach of our hallowed principle of separation of governmental powers. Should the legislature remove from the courts the power to sentence, judges would become but automatons, serving as mere moderators in the administration of justice. For these reasons, it is only proper to require of the legislature that it be elegant and precise in its selection of words and in its construction of statutes which have the effect of removing judicial discretion from the imposition of sentences.

The act in question here reads as follows:

". . . From and after the passage of this act, all sentences for criminal offenses of persons who at the time sentence is imposed are held in custody in default of bail, or otherwise, shall begin to run and be computed from the date of commitment for the offense for

which said sentence shall be imposed, unless the person sentenced shall then be undergoing imprisonment under a sentence imposed for any other offense or offenses, in which case the said sentence shall begin to run and be computed, either from the date of imposition thereof or from the expiration of such other sentence or sentences, as the court shall, in its discretion, direct."

A search of the legislative journals failed to shed any light on the intent of the legislature. We are left with the words themselves from which we must discern what the act was intended to include, though section two of the act does define what date is the "date of commitment" in section one.

"The date of commitment referred to in section one of this act, shall be the date of the *last* commitment for the offense for which the sentence is imposed." (Italics supplied.)

Reading these two sections together, as we must, it is clear that where a man is held in custody, then released, and then retaken into custody for the same offense, and remains in custody until he is sentenced for that offense, he shall be credited with time from the beginning of the second period of commitment. If he were never taken into custody a second time, the act, by its own wording, would have no application, for the act applies only to "persons who at the time sentence is imposed are held in custody in default of bail, or otherwise . . . ."

Here, defendant was in custody when sentence was imposed. The crucial question is for what reason was he then held in custody? His second period of custody began on September 27, 1962, as a result of an arrest for charges completely unrelated to the offense here under consideration. His custody continued as such until February 11, 1963, when he was adjudged guilty

of the aggravated assault and battery upon Gladys Justis. It may well be that such adjudication transformed the nature of his custody to one directly a result of the charge, even though no sentence was then imposed. When sentence was imposed on March 26, 1963, the custody which defendant was undergoing relating to the offense for which he was being sentenced had begun, if at all, on February 11, 1963. Certainly, then, the period from November 30, 1960, to January 16, 1962, cannot qualify as the last commitment for the offense for which the sentence is imposed.

If we view the period from February 11, 1963, to March 26, 1963, as custody for the offense for which sentence was imposed, that would be the last period spoken of in section 2 of the act. If, on the other hand, we view that period as merely a continuation of a custody started for purposes unrelated to the offense for which the sentence was imposed, we must ask the further question whether the legislature intended that *any* period of custody subsequent to the period of custody for the offense for which the sentence was imposed qualifies that first period of custody as a credit to the sentence imposed, regardless of the reason for such second custody. Such an interpretation would be an undue strain upon the clear wording of the act and the obvious intent of the legislature. Such an interpretation could be overreached by the habitual criminal, for he is the one most likely to be in custody on an unrelated charge when sentence is pronounced on a prior charge. Clearly then, under any reasonable interpretation, the custody at the time of sentencing must be related to the offense for which sentence is imposed in order to qualify *any* period as a credit to the sentence imposed.

An examination of the statutes of our neighboring States discloses that Delaware has a statute very

similar to the Pennsylvania act here under discussion. However, that act goes on to add:

"Any period of actual incarceration of a person awaiting trial, who thereafter, before trial or sentence succeeds in securing provisional liberty on bail, shall be credited to him in determining the termination date of sentence. (as amended 49 Del. Laws Ch. 244, eff. July 1, 1953—7 Del. Code Ann. §3902(b))."

The fact that the Delaware act was passed later in time than the Pennsylvania act and the similarity in the wording of the two acts leads one to believe that the Delaware act was modeled after our statute. But the further provision, as set forth above, leads to the conclusion that the same provision is *not* a part of our statute. And, the Model Penal Code of the American Law Institute, in section 7.09, provides that *any* period of detention resulting from the offense for which the sentence is imposed shall be deducted from the minimum and maximum sentences imposed. Our act simply does not apply where a man secures provisional liberty before sentencing and remains at liberty until sentencing.

Commonwealth ex rel. Accobacco v. Burke, 162 Pa. Superior Ct. 592, is to the point. There, the accused was arrested on March 14, 1939, and was imprisoned in default of bail. While so being held, he was extradited to New York and served a sentence there. At the completion of his New York sentence he was returned to Pennsylvania on November 12, 1946, and pleaded guilty to the Pennsylvania indictments. The court then sentenced him to a maximum of four years, computed from November 12, 1946, the date of his return to Pennsylvania. The Superior Court affirmed the lower court decision discharging the prisoner, stating that the date of commitment, within the meaning of the act of 1937, was March 14, 1939. In so doing, the court

laid great stress upon the fact that extradition was beyond the control of the prisoner but was a discretionary power of the Governor of Pennsylvania, the exercise of which should not operate to deprive the prisoner of what would otherwise be a continuous period of incarceration. However, in so stating, the court was careful to deduct from the total time the time spent in New York under the New York sentence.

"Nevertheless, it was proper to deduct from the total time of actual imprisonment preceding imposition of final sentence that period of time during which the relator was outside the Commonwealth of Pennsylvania . . . Sections 1 and 2 of the Act of 1937, 19 PS §§894, 895, make it clear that the period of imprisonment for which credit is to be given must be by reason of 'the offense for which said sentence shall be imposed.' "

The court laid great stress upon the fact that the break between the two separate periods of Pennsylvania custody was not the result of any period of provisional liberty, on bail or otherwise. The court observed:

"As applied to a person charged with crime who has been imprisoned in default of bail, ordinarily there would be a single 'commitment' prior to imposition of sentence, namely, the original commitment to await trial upon the charge. But the accused might, after having been imprisoned to await trial in default of bail, subsequently succeed in obtaining provisional liberty on bail, thus terminating the original period of actual imprisonment. Pursuant to section 8 of the Act of March 31, 1860, P. L. 427, 19 PS §53, the surety might avail himself of the warrant or authority embodied in the bail piece and surrender the accused to the sheriff or jailer for imprisonment in advance of trial. Such action would constitute a subsequent 'commit-

ment'; and this 'commitment' would mark the commencement of a new period of actual imprisonment." (page 596.)

And on page 597:

". . . we are of the opinion that the expression 'last commitment,' as used in section 2 of the Act of May 28, 1937, P. L. 1036, 19 PS §895, means that commitment which marks the commencement of the last period of actual imprisonment *immediately preceding* imposition of final sentence." (Italics supplied.)

Based on the foregoing, it appears that if the period from February 11, 1963, to March 26, 1963, is to be regarded as a commitment unrelated to the offense for which sentence is imposed, defendant is entitled to no credit for any time spent in prison in default of bail. However, such time should be considered as incarceration resulting from the offense for which sentence was imposed, for, even if defendant had been able to post bond for the unrelated offenses for which he was under imprisonment on September 27, 1962, he would have continued to remain in prison by virtue of his impending sentence on the guilty adjudication. For this reason, that period of custody is the date of the last commitment within the meaning of the act, and credit from February 11, 1963, to March 26, 1963, should be allowed on the sentence imposed.

However, it is necessary for the sentencing judge to state the date of commitment as part of the sentence only when sentence is imposed to any prison other than the one in which the person sentenced was held in custody pending sentencing: Act of May 28, 1937, P. L. 1036, sec. 3, 19 PS §896. That is not the case here and the failure so to indicate a date of commitment does not invalidate the sentence. The computation of the running of a sentence is a ministerial matter traditionally left in the hands of the keeper of the jail.